No. 21-13198-CC (*consolidated with* No. 21-12571-CC)

In the
# United States Court of Appeals
## for the Eleventh Circuit

DETRICH BATTLE,

*Plaintiff/Appellant,*

v.

GEORGIA DEPARTMENT OF CORRECTIONS, *et al.,*

*Defendant/Appellee,*

&

HANCOCK STATE PRISON *et al.,*

*Defendants.*

On Appeal from the United States District Court for the
Middle District of Georgia, Macon Division
No. 5:20-cv-00063-MTT — Hon. Marc T. Treadwell, *Chief Judge*

**Opening Brief**

Howard W. Anderson III
John-Paul Baum
TRULUCK THOMASON, LLC
3 BOYCE AVE.
Greenville, SC 29601
T 864-331-1751
F 864-243-8115
howard@truluckthomason.com
johnpaul@truluckthomason.com

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

I hereby certify that the following persons and entities may have an interest in the outcome of this case:

Anderson, Howard W., III, Attorney for Plaintiff/Appellant

Barnes, Carey, Defendant Below

Battle, Detrich, Plaintiff/Appellant

Baum, John-Paul, Attorney for Plaintiff/Appellant

Carr, Chris, Attorney General, Attorney for Defendant/Appellee

Christopher M. Carr, Attorney General, Attorney for Defendant/Appellee

Clark, S. (Lt.), Defendant Below

Davis, Belinda, Defendant Below

Dixon, K. (Sgt.), Defendant Below

Foye, F/N/U (Lt.), Defendant Below

Georgia Department of Administrative Services, Insurer of Defendant/Appellee

Georgia Department of Corrections, Defendant/Appellee

Hancock State Prison, Defendant Below

Ingram, E. (Cpt.), Defendant Below

Ivey, George, Deputy Warden, Defendant Below

Koon, Jack, Deputy Director, Defendant Below

Lewis, Kimberly B., Sr. Asst. Attorney General, Attorney for Defendant/Appellee

Pearson, F. (Sgt.), Defendant Below

Petrany, Stephen, Solicitor General, Attorney for Defendant/Appellee

Sellers, E. (Warden), Defendant Below

Stoff, Katherine P., Sr. Asst. Attorney General, Attorney for Defendant/Appellee

Treadwell, Hon. Marc T., U.S. District Court Judge

Truluck Thomason, LLC, Law Firm for Plaintiff / Appellant

Waldbeser, Drew F., Deputy Solicitor General, Attorney for Defendant/Appellee

Watkins, Vera, Defendant Below

Webb, Bryan K., Deputy Attorney General, Attorney for Defendant/Appellee

s/Howard W. Anderson III

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is requested in this appeal, which, as the district court noted below, [dkt. 56 at 5], involves a question without controlling precedent from this Court.

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure

Statement...................................................................... C1

Statement Regarding Oral Argument ......................................i

Table of Contents ................................................................ii

Table of Citations ...............................................................iv

Statement Regarding Adoption of Briefs of Other Parties ....................vi

Statement of Subject-Matter Jurisdiction ...............................vii

Statement of Issues ............................................................ 1

Statement of the Case ........................................................ 2

   I.  Course of Proceedings and Disposition Below.................................. 2

   II. Statement of Facts ....................................................... 3

   III. Standard of Review ....................................................... 5

Summary of the Argument ................................................... 6

Argument............................................................................ 7

   I.  The 11th Amendment Does Not Bar ADA Retaliation Claims. ........ 7

A. Congress Explicitly Sought to Abrogate State Immunity. .........9

B. The 14th Amendment Allowed the Abrogation of State

Sovereign Immunity for ADA Retaliation Claims. .....................9

II. Any Federal Claim Barred Under the 11th Amendment Can Only

Be Dismissed "Without Prejudice." .................................................16

III. If the 11th Amendment Applies to Retaliation Claims, the District

Court Had no Supplemental Jurisdiction. ......................................17

Conclusion ............................................................................................19

Certificate of Compliance with Rule 32 .................................................20

Certificate of Service ............................................................................20

# TABLE OF CITATIONS

## Cases

*Bd. of Trs. v. Garrett*, 531 U.S. 356 (2001) ............................ 7, 11, 15, 17

*Boddie v. Connecticut*, 401 U.S. 371 (1971) ............................................ 13

*Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508 (1972)..... 12

*City of Boerne v. Flores*, 521 U.S. 507 (1997) ......................................... 10

*Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432 (1985) .............. 11

*Coleman v. Court of Appeals*, 566 U.S. 30 (2012) ................................. 8, 9

Crotwell v. Hockman-Lewis, Ltd., 734 F.2d 767 (11th Cir. 1984) ......... 16

*Demshki v. Monteith*, 255 F.3d 986 (9th Cir. 2001) ............................... 15

*Kimel v. Fla. Bd. of Regents*, 528 U.S. 62 (2000) ................................... 10

*Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533 (2002) ............... 18

*Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997) ...................................... 14

*Samara v. Taylor*, 38 F.4th 141 (11th Cir. 2022) ..................................... 5

*Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996) ...................... 16

(*) *Stalley v. Orlando Reg'l Healthcare Sys.*, 524 F.3d 1229 (11th Cir. 2008) .......................................................................................... 17, 18

(*) *Tennessee v. Lane*, 541 U.S. 509 (2004) .................................... passim

## Constitutional Provisions

U.S. Const. Amend. I........................................................................12, 14

U.S. Const. Amendment XI.............................................................. passim

(*) U.S. Const. Amend. XIV............................................................6, 9, 11

## Statutes

18 U.S.C. § 1505 .................................................................................14

18 U.S.C. § 1512 .................................................................................14

28 U.S.C. § 1291 .................................................................................vi

28 U.S.C. § 1331 .................................................................................vi

28 U.S.C. § 1367 .........................................................................vi, 1, 18

ADA Amendments Act of 2008, 110 P.L. 325, 122 Stat. 3553 (Sep. 25,

    2008) ...........................................................................................7

Americans with Disabilities Act of 1990 ("ADA"), 101 P.L. 336, 104

    Stat. 327 (July 26, 1990), *codified as amended* at 42 U.S.C. §§

    12101 *et seq*...................................................................... 1, 7, 8, 9

O.C.G.A. § 9-2-61.................................................................................18

(*) = Principal Authorities Relied Upon

**STATEMENT REGARDING ADOPTION OF BRIEFS OF OTHER PARTIES**

Plaintiff-Appellant Dietrich Battle joins in and adopts the legal arguments set forth in the Opening Brief in *Owens v. Georgia Department of Human Services*, No. 21-12571 to the extent applicable to him.

## STATEMENT OF SUBJECT-MATTER JURISDICTION

Provided that the 11th Amendment does not preclude it (a legal issue on appeal), the district court would have had federal-question jurisdiction over the federal claims presented, 28 U.S.C. § 1331, and would have had supplemental jurisdiction over the state-law claims, 28 U.S.C. § 1367. But if the 11th Amendment did apply to a federal claim, no federal jurisdiction over that claim would have existed. And if the 11th Amendment barred federal jurisdiction, no supplemental jurisdiction would have been authorized.

The district court entered final judgment on August 27, 2021. [Dk. 57]. Notice of appeal to this Court was timely filed on September 17, 2021. [Dkt. 59].

This Court has jurisdiction to review the district court's final judgment. 28 U.S.C. § 1291.

1. Where Congress validly abrogated state sovereign immunity with respect to retaliation claims under the Americans with Disabilities Act of 1990 ("ADA"), 101 P.L. 336, 104 Stat. 327 (July 26, 1990), *codified as amended* at 42 U.S.C. §§ 12101 *et seq.*, did the district court err in invoking the 11th Amendment to dismiss an ADA-retaliation claim?

2. For all federal claims barred under the 11th Amendment, did the district court err in entering a merits judgment rather than a dismissal "without prejudice," as required?

3. If the 11th Amendment precluded the district court from exercising jurisdiction over all federal claims, such that no federal claim was ever within the Court's original jurisdiction to have conferred jurisdiction under the supplemental jurisdiction statute, 28 U.S.C. § 1367, did the district err in exercising supplemental jurisdiction over the state-law claims?

I. **Course of Proceedings and Disposition Below.**

Appellant Detrich Battle filed a *pro se* complaint, *in forma pauperis* ("IFP"), in February 2020 in the Middle District of Georgia against Hancock State Prison, alleging ADA violations. [Dkt. 1]. Upon initial IFP screening of the Complaint, the district court identified pleading defects and ordered Mr. Battle to recast his pleading. [Dkt. 4].

As ordered, Mr. Battle submitted a recast pleading for screening, which named Hancock State Prison and ten individual state employees. [Dkt. 5]. Upon screening, the district court dismissed the individual-capacity claims without prejudice as frivolous. [Dkt. 6]. But it allowed the claims against Hancock State Prison and the official-capacity claims to proceed. [*Id.*].

In response to a motion to dismiss, the district court determined that the Georgia Department of Corrections ("GDC") should be substituted for Hancock State Prison, as the latter has no independent legal existence under state law. [Dkt. 36 at 6]. As to the claims against the GDC, the district court held that the state-law claims against it would be dismissed for failure to state a claim. [*Id.* at 7-9]. The district court also determined

that the official-capacity claims were "redundant" and thus dismissed them as to the individual defendants. [*Id.* at 6]. As for the ADA claims against the GDC, the district court determined that the 11th Amendment barred the claim for damages under Title I of the ADA, pursuant to Supreme Court precedent. [*Id.* at 13]. But because briefing on the retaliation claim under Title V of the ADA was inadequate, the district court declined to reach a potential 11th Amendment argument as to that claim and invited a subsequent motion on the issue. [*Id.* at 13-14].

In response to a later-filed motion for judgment on the pleadings, the district court held that the 11th Amendment did bar the ADA retaliation claim, too. [Dkt. 56 at 5-6]. It then entered final "JUDGMENT…in favor of Defendant." [Dkt. 57].

Mr. Battle then timely filed a notice of appeal to this Court. [Dkt. 59].[1]

## II.  Statement of Facts

Liberally construing Mr. Battle's various *pro se* filings, the district court characterized Mr. Battle's allegations as follows:

> It appears that Battle used to be employed by the Georgia Department of Corrections. Battle alleges that on December 1,

---

[1] This Court subsequently consolidated Mr. Battle's appeal with *Dupree v. Owens*, No. 21-12571.

2014, he was summoned to a meeting with Deputy Warden of Security Ivory, Captain Ingram, and Lieutenant Clark. Doc. 5 at 9. He claims it was a "harassment meeting on the issue of them taking my money, because of an incident that occurred on November 7, 2014." *Id.* He alleges he experienced chest pain during the meeting and asked them to call an ambulance or his wife, but they refused. *Id.* He requested medical leave for December 15, 2014 through December 17, 2014, but "Lt. Clark, Captain Ingram and Deputy Warden of Security Officer Ivory denied this[.]" *Id.* at 10. During the week of December 15, he "called EEOC to complain about harassment and abusive treatment on the job because of my disability (medical)." *Id.*

On April 15, 2015, Battle alleges, he fell and injured himself at work. He alleges he was supposed to be paid worker's compensation, but the Defendants mishandled paperwork related to worker's compensation and threatened to terminate him. *Id.* at 10- 11. On April 20, 2015, he returned to work with permanent restrictions set by his doctor. *Id.* He also returned to work on July 13, 2015 (the complaint is unclear about what happened between April 20 and July 13), and he attended a morning briefing, but he did not receive an assignment. Instead, he was sent home. *Id.* He called "personnel" but was told he had too many restrictions to work. *Id.* He claims that Clark, Ingram, Ivory, and Warden Sellers "continuously harassed and treated me indifferently [sic] from the other officers working in the booth . . . They failed to adequately place me and made my medical condition worse by unfair practices and treatment, when they removed my inmates and made me perform manual labor, and this was after my injury sustained on the job." *Id.*

In September 2015, he was diagnosed with postural orthostatic tachycardia syndrome (POTS). He also claims that at some point (it is unclear when), he was diagnosed with a partial torn rotator cuff, sciatica, bulging discs, and degenerative

disc disease. Doc. 1 at 4. He was terminated on April 20, 2018. In his EEOC charge, he claimed his employer told him he was discharged for not providing updated medical documentation, but that (i) his doctor actually had sent the documents and (ii) the deadline for sending the documents was April 24, 2018— four days after he was discharged. Battle's pleadings do not discuss what happened between September 2015 and April 2018. Based on a letter Battle submitted along with his complaint, it appears he had been placed on leave without pay from July 29, 2015 to April 2018. Doc. 5-1 at 43.

[Dkt. 36 at 2-4].

## III.  Standard of Review

Legal questions, including the propriety of motions to dismiss and for judgment on the pleadings, are reviewed *de novo*. *See Samara v. Taylor*, 38 F.4th 141 (11th Cir. 2022). All issues presented here are pure questions of law.

1. The district court erred in holding that the 11th Amendment precludes Mr. Battle's ADA-retaliation claim. The text of the ADA expressly seeks to override sovereign immunity. Further, the Supreme Court has already held that the 14th Amendment allowed Congress to override sovereign immunity as to ADA Title II's protections for physical access to courthouses. The 14th Amendment should likewise allow Congress to decide that courthouses must not only be physically accessible but also that the disabled must not be retaliated against for trying to access them.

2. The 11th Amendment is a limitation on federal jurisdiction. Consequently, any claim barred under the 11th Amendment should have been dismissed without prejudice.

3. Supplemental jurisdiction for Mr. Battle's state-law claims depended upon the existence of a federal claim properly within the district court's federal-question jurisdiction. If the 11th Amendment barred the ADA retaliation claim, all state-law claims should have been dismissed without prejudice, for lack of jurisdiction.

**ARGUMENT**

## I. The 11th Amendment Does Not Bar ADA Retaliation Claims.

Prior to enacting the ADA, "Congress compiled a vast legislative record documenting massive, society-wide discrimination against persons with disabilities." *Bd. of Trs. v. Garrett*, 531 U.S. 356, 377 (2001) (Breyer, J., dissenting) (quotation omitted). That record included evidence, among other things, from "13 congressional hearings" and from a special task force that "held hearings in every State, attended by more than 30,000 people, including thousands who had experienced discrimination firsthand." *Id*. Based upon that extensive record, a bipartisan, supermajority in Congress approved the ADA and its sweeping scope. Title I provides disability protections in employment, Title II does so in public services, Title III in accommodations, and Title IV does so in telecommunications. *See* ADA, 101 P.L. 336, 104 Stat. 327.[2] Title V contains miscellaneous provisions, including, as is relevant here, provisions abrogating state sovereign immunity and prohibiting retaliation:

---

[2] In 2008, Congress amended the ADA to expand the protections in the ADA. *See* ADA Amendments Act of 2008, 110 P.L. 325, 122 Stat. 3553 (Sep. 25, 2008).

7

SEC. 503. Notes PROHIBITION AGAINST RETALIATION AND COERCION.

(a) RETALIATION. – No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act.

(b) INTERFERENCE, COERCION, OR INTIMIDATION. – It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this Act….

ADA, 101 P.L. 336, 104 Stat. 327, 370, 378, §§ 503, *codified at* 42 U.S.C. § 12203.

Contrary to the district court's holding below, [dkt. 56], Congress could and did abrogate 11th Amendment immunity with respect to retaliation claims. While that Amendment generally renders non-consenting states "immune from suits for damages" in federal court brought by private plaintiffs, "Congress may abrogate the States' immunity from suit pursuant to its powers under § 5 of the Fourteenth Amendment." *Coleman v. Court of Appeals*, 566 U.S. 30, 35 (2012) (citations omitted). To abrogate sovereign immunity, Congress need only be "unmistakably clear in

the language of the statute" that it is abrogating state immunity and then act pursuant to its 14th Amendment powers, rather than its Article I powers. *Coleman*, 566 U.S. at 36 (quotation omitted). Both requirements are met for ADA retaliation claims.

## A. Congress Explicitly Sought to Abrogate State Immunity.

The ADA contains an express abrogation of state immunity under the 11th Amendment: "A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this Act." ADA, 101 P.L. 336, 104 Stat. 327, 370, § 502, *codified at* 42 U.S.C. § 12202. The Supreme Court has already held that that language "easily" satisfies the explicit-intent-to-abrogate requirement. *Tennessee v. Lane*, 541 U.S. 509, 518 (2004).

## B. The 14th Amendment Allowed the Abrogation of State Sovereign Immunity for ADA Retaliation Claims.

Section 5 of the 14th Amendment authorizes Congress to "enforce, by appropriate legislation, the provisions [of the Amendment]," U.S. Const. Amend. XIV § 5, including the 14th Amendment's guarantee that a state

may not "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws," *id.* § 1. The Supreme Court has determined that "Congress' power 'to enforce' the Amendment includes the authority both to remedy and to deter violation of rights guaranteed thereunder by prohibiting a somewhat broader swath of conduct, including that which is not itself forbidden by the Amendment's text." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 81 (2000) (citation omitted). The power to enact prophylactic remedies includes the power to "proscrib[e] practices that are discriminatory in effect, if not in intent, to carry out the basic objectives of the Equal Protection Clause." *Lane*, 541 U.S. at 520. So long as Congress is not attempting to "work a substantive change in the governing law [of the rights guaranteed under the 14th Amendment]," the judiciary must provide "Congress…a wide berth in devising appropriate remedial and preventative measures for unconstitutional actions." *Id.* at 519. Enforcement of rights only becomes substantive alterations of them when Congress' desired remedy lacks "congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *City of Boerne v. Flores*, 521 U.S. 507, 511 (1997).

The Supreme Court has twice addressed the validity of the ADA's waiver of state sovereign immunity, although never with respect to a retaliation claim as is presented here. In *Garrett*, 531 U.S. 356, the Supreme Court held that the 14th Amendment did not allow Congress to abrogate state sovereign immunity with respect to ADA Title I claims (*i.e.,* those relating to employment accommodations). By contrast, the Supreme Court held in *Lane*, 541 U.S. 509, that Congress could abrogate sovereign immunity with respect to the access-to-the-courts protections (*e.g.*, courthouse accessibility requirements) in Title II of the ADA.

According to the Supreme Court, the different outcomes resulted from the different substantive rights at issue in the two cases. Title I protects the disabled from being denied equal protection, a limited right given that only rational-basis review governs differing treatments based upon disability. *Garrett*, 531 U.S. at 366-67 (citing *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432 (1985)). By contrast, the access-to-the-courts provisions of Title II not only enforce the guarantee of equal protection, but also other constitutional rights that "are subject to more searching judicial review." *Lane*, 541 U.S. at 543. Included among them is the due-

process requirement that states afford civil litigants "a meaningful opportunity to be heard by removing obstacles to their full participation in judicial proceedings." *Id.* (citation omitted).

Not explicitly mentioned in *Lane*, but certainly relevant among the rights that Congress could decide needed protecting, is the First Amendment's guarantee of the right "to petition the government for a redress of grievances." U.S. Const. Amend. I. Without access to the courts, that right would be materially undermined, as the judiciary is a co-equal branch of the government eligible to receive petitions for redress. *See Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) ("Certainly the right to petition extends to all departments of the Government. The right of access to the courts is indeed but one aspect of the right of petition.").

In approving Congress' power to abrogate sovereign immunity under Title II to protect the right of access to the courts, the Supreme Court in *Lane* explained that Congress found widespread deprivations of access for the disabled: Congress "learned that many individuals, in many States across the country, were being excluded from courthouses and court proceedings by reason of their disabilities. A report before Congress

showed that some 76% of public services and programs housed in state-owned buildings were inaccessible to and unusable by persons with disabilities…." *Lane*, 541 U.S. at 527 (citation omitted).

Given that "within the limits of practicability, a State must afford to all individuals a meaningful opportunity to be heard if it is to fulfill the promise of the Due Process Clause," *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971) (quotation omitted), and given the congressional finding that states were excluding the disabled from public facilities such as the courts, it is "clear beyond peradventure that…access to public facilities was an appropriate subject for prophylactic legislation." *Lane*, 541 U.S. at 529.  Title II's requirement for states to make reasonable accommodations to enable disabled access to courthouses was a congruent and proportional remedy to protect the "fundamental right of access to the courts." *Id.* at 533-34.

*Lane* should make the resolution of this appeal easy. If Congress could decide that states may not physically bar the disabled from courthouse access, Congress could also decide that states should not be able to harass, or fire, the disabled for having invoked their ADA rights. Otherwise, the disabled may be chilled from exercising their right "to petition the

government for a redress of grievances," U.S. Const. Amend. I, and would lack a meaningful ability to access the courts, *see Lane*, 541 U.S. at 533 ("Title II's affirmative obligation to accommodate persons with disabilities in the administration of justice cannot be said to be so out of proportion to a supposed remedial or preventive object that it cannot be understood as responsive to, or designed to prevent, unconstitutional behavior. It is, rather, a reasonable prophylactic measure, reasonably targeted to a legitimate end." (citations omitted)). Far from being extraordinary, an anti-retaliation prohibition is a common tool in the congressional toolkit to "maintain[] unfettered access to statutory remedial mechanisms." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997) (citations omitted).[3]

---

[3] Individuals—state employees or otherwise—and private companies who retaliate for a complaint of discrimination to the EEOC or to a federal court may be criminally prosecuted. *See* 18 U.S.C. § 1505 ("Whoever corruptly, or by threats or force, or by any threatening letter or communication influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States… [s]hall be fined under this title, imprisoned not more than 5 years or… or both."); *id.* § 1512(b)(1)-(2)(A) ("Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—(1) influence, delay, or prevent the testimony of any person in an official proceeding; (2) cause or induce any person to—(A)

While the Opposition will likely invite this Court to follow the contrary holding in *Demshki v. Monteith*, 255 F.3d 986 (9th Cir. 2001), this Court should decline to do so. For one thing, that case preceded *Lane's*, approval of 11th Amendment abrogation as to Title II's access-to-the-courts provisions. *Lane*, 541 U.S. at 533-34. Second, the decision fails to recognize that—11th Amendment or not—Title I still applies to the states under the Supremacy Clause. *Garrett*, 531 U.S. at 374 n.9 ("Title I of the ADA still prescribes standards applicable to the States. Those standards can be enforced by the United States in actions for money damages, as well as by private individuals in actions for injunctive relief under *Ex parte Young*, 209 U.S. 123 (1908)."). Title I claims are always available, even if the relief (damages or injunctive) depend on whether the EEOC or the private plaintiff ultimately sues for relief; therefore, *Demshki*'s syllogism— *i.e.*, because no Title I claim, no Title V claim—fails.

---

withhold testimony, or withhold a record, document, or other object, from an official proceeding… shall be fined under this title or imprisoned not more than 20 years, or both."). Providing a civil remedy for retaliation that reaches state agencies reduces the need to resort to criminal proceedings against state employees.

In short, the 14th Amendment precludes the State from using the 11th Amendment to avoid a claim that it interfered with a disabled individual's resort to his federally protected rights.

## II. Any Federal Claim Barred Under the 11th Amendment Can Only Be Dismissed "Without Prejudice."

Regardless as to the resolution of Issue One, the merits judgment below cannot stand.

"The Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 72-73 (1996). Where the 11th Amendment successfully precludes a federal claim, the claim must be "dismissed for a lack of jurisdiction." *Id.* Dismissals for lack of jurisdiction are dismissals without prejudice. *Crotwell v. Hockman-Lewis, Ltd.*, 734 F.2d 767, 769 (11th Cir. 1984) (amending the judgment to be a dismissal without prejudice and explaining that "since the court lacked subject matter jurisdiction over the action, it had no power to render a judgment on the merits." (citation omitted)).

Despite that well-settled rule, the district court below purported to enter final judgment "in favor of Defendant" [Dkt. 57] after having found that both the Title I claim (correctly) and Title V claim (incorrectly) were barred under the Eleventh Amendment.[4] But only a dismissal without prejudice is authorized when the 11th Amendment applies. *See Stalley v. Orlando Reg'l Healthcare Sys.*, 524 F.3d 1229, 1234-35 (11th Cir. 2008) ("[Because] the district court lacked subject matter jurisdiction over the complaint, and it had no power to render a judgment on the merits. Consequently, the district court should have dismissed the complaint without prejudice, and we remand in part so that the district court can reenter its dismissal order without prejudice." (citation omitted)).

The judgment below should be vacated with instructions to dismiss without prejudice all ADA claims barred under the 11th Amendment.

### III. If the 11th Amendment Applies to Retaliation Claims, the District Court Had no Supplemental Jurisdiction.

Mr. Battle brought not only federal claims under Title I and Title V of the ADA but also under state law. *See* [dkt. 36 (construing claims)]. The

---

[4] The district court correctly determined, [dkt. 36 at 13], that the 11th Amendment barred the Title I claim. *Garrett*, 531 U.S. 356.

only jurisdictional authority that could have authorized the district court to hear those state-law claims was supplemental jurisdiction. That grant of jurisdiction, however, only exists in a "civil action of which the district courts have original jurisdiction." 28 U.S.C. § 1367(a). The Supreme Court has held that "§ 1367(a)'s grant of jurisdiction does not extend to claims against nonconsenting state defendants." *Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 542 (2002).

To the extent that the 11th Amendment precluded the district court from exercising original jurisdiction over the federal claims, no jurisdiction existed to consider the state-law claims. The district court, however, purported to consider them on the merits. *See* [dkt. 36 at 9 (holding that Mr. Battle "fails to state a claim" under state law for whistleblowing)]. If no federal claim was properly before the district court, the judgment should be vacated with instructions to dismiss all state-law claims without prejudice for lack of jurisdiction. *Stalley*, 524 F.3d at 1234-35 (citation omitted). [5]

---

[5] The upshot of a dismissal for lack of jurisdiction is that Mr. Battle will have six months after judgment in which to re-file any state claims that he may have. O.C.G.A. § 9-2-61(c) ("The provisions of subsection (a) of this Code section granting a privilege of renewal [within 6 months after

## CONCLUSION

This Court should vacate the judgment below and remand for further proceedings. Alternatively, this Court should vacate the judgment with instructions to dismiss without prejudice all federal claims barred under the 11th Amendment. If all federal claims are barred, then the Court should instruct the district court to dismiss the state-law claims without prejudice for lack of jurisdiction.

Dated this 28th day of September, 2022.

Respectfully submitted,

DETRICH BATTLE

s/Howard W. Anderson III
Howard W. Anderson III

s/John-Paul Baum
John-Paul Baum

TRULUCK THOMASON, LLC
3 BOYCE AVE.
Greenville, SC 29601
T 864-331-1751
F 864-243-8115
howard@truluckthomason.com
johnpaul@truluckthomason.com

_____

dismissal] shall apply if an action is discontinued or dismissed without prejudice for lack of subject matter jurisdiction in either a court of this state or a federal court in this state.").

## CERTIFICATE OF COMPLIANCE WITH RULE 32

I hereby certify that this brief complies with the typeface requirement of Fed. R. App. Pro. 32(a)(5) because it was composed using MS Word's proportionally spaced Century Schoolbook typeface, with 14-point font.

I also certify that the brief complies with the type-volume limitation of Fed. R. App. Pro. 32(a)(7)(B) because it contains 3900 words.

<u>s/Howard W. Anderson III</u>
Howard W. Anderson III

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<u>s/Howard W. Anderson III</u>
Howard W. Anderson III