No. 21-13198
*(consolidated with No. 21-12571)*

In the

# United States Court of Appeals
## for the Eleventh Circuit

Detrich Battle,
*Plaintiff-Appellant,*

v.

Georgia Department of Corrections,
*Defendant-Appellee.*

On Appeal from the United States District Court for the
Middle District of Georgia
No. 5:20-cv-00063 — Marc T. Treadwell, *Chief Judge*

## RESPONSE BRIEF OF STATE DEFENDANT

Bryan K. Webb
  *Deputy Attorney General*
Katherine Powers Stoff
  *Senior Asst. Attorney General*
Kimberly Blue Lewis
  *Senior Asst. Attorney General*

Christopher M. Carr
  *Attorney General of Georgia*
Stephen J. Petrany
  *Solicitor General*
James E. Barrett
  *Honors Fellow*
Office of the Georgia
  Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3602
jbarrett@law.ga.gov

*Counsel for Appellee*

No. 21-12571
*(consolidated with No. 21-13198)*

## In the

# United States Court of Appeals
## for the Eleventh Circuit

Jennifer Dupree,
*Plaintiff-Appellant,*

v.

Pamela Owens & Department of Human Services,
*Defendants-Appellees.*

On Appeal from the United States District Court for the
Northern District of Georgia
No. 1:20-cv-04915 — Michael L. Brown, *Judge*

## RESPONSE BRIEF OF STATE DEFENDANTS

Bryan K. Webb
  *Deputy Attorney General*
Katherine Powers Stoff
  *Senior Asst. Attorney General*

Christopher M. Carr
  *Attorney General of Georgia*
Stephen J. Petrany
  *Solicitor General*
James E. Barrett
  *Honors Fellow*
Office of the Georgia
  Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3602
jbarrett@law.ga.gov

*Counsel for Appellees*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

I hereby certify that the following persons and entities may have an interest in the outcome of these cases:

Anand, Justin S., U.S. Magistrate Court Judge, Northern District of Georgia

Anderson, Howard W., III, Counsel for Plaintiff Battle

Barnes, Carey, Defendant

Barrett, James E., Honors Fellow, Counsel for Defendants

Battle, Detrich, Plaintiff

Biegler, Philip J., Counsel for Plaintiff Dupree

Brown, Michael L., U.S. District Judge, Northern District of Georgia

Carr, Christopher M., Attorney General of Georgia, Counsel for Defendants

Clark, S., Lieutenant, Defendant

Davis, Belinda, Defendant

Dixon, K., Sergeant, Defendant

Dupree, Jennifer, Plaintiff

Foye, Lieutenant, Defendant

Friedman, Kaplan, Seiler & Adelman LLP, Counsel for Plaintiff Dupree

Georgia Department of Administrative Services, Insurer for Dept.
    of Corrections and Dept. of Human Services

Georgia Department of Corrections, Defendant/Appellee

Georgia Department of Human Services, Defendant/Appellee

Georgia Department of Law, Counsel for Defendants

Hancock State Prison, Defendant

Ingram, E., Captain, Defendant

Ivey, George, Deputy Warden, Defendant

Koon, Jack, Deputy Director, Defendant

Lewis, Kimberly B., Senior Assistant Attorney General, Counsel
    for Defendants

Owens, Pamela, Defendant/Appellee

Pearson, F., Sergeant, Defendant

Petrany, Stephen J., Solicitor General, Counsel for Defendants

Sellers, E, Warden, Defendant

Stoff, Katherine P., Senior Assistant Attorney General, Counsel
    for Defendants

Treadwell, Marc T., Chief U.S. District Judge, Middle District of
    Georgia

Waldbeser, Drew F., former Deputy Solicitor General and former
    Counsel for Defendants

Watkins, Vera, Defendant

*Battle v. Ga. Dept. of Corr.*, No. 21-13198;
*Dupree v. Owens*, No. 21-12571


Webb, Bryan K., Deputy Attorney General, Counsel for
 Defendants

<u>/s/ *James E. Barrett*</u>
Counsel for Appellees

## STATEMENT REGARDING CONSOLIDATION

This Court consolidated *Battle v. Georgia Department of Corrections*, No. 21-13198, and *Dupree v. Owens*, No. 21-12571. In this response brief, the State Defendants have consolidated their discussion and arguments, with two exceptions. Part II of the Argument pertains only to *Dupree*. And in the Statement of the Case, each case has its own background and procedural history sections.

## STATEMENT REGARDING ORAL ARGUMENT

State Defendants do not request oral argument in this case. The facts and legal arguments are adequately presented in the briefs and the decisional process would not be significantly aided by oral argument.

# TABLE OF CONTENTS

**Page**

Statement Regarding Consolidation ................................................ i

Statement Regarding Oral Argument ............................................ ii

Table of Authorities ....................................................................... v

Jurisdiction ................................................................................... ix

Statement of Issues ....................................................................... 1

Introduction ................................................................................... 2

Statement of the Case.................................................................... 4

    A. *Battle* ................................................................................... 4

        1. Factual Background....................................................... 4

        2. Procedural History........................................................ 7

    B. *Dupree* ................................................................................ 8

        1. Factual Background....................................................... 8

        2. Procedural History...................................................... 10

    C. Standard of Review ............................................................ 13

Summary of Argument ................................................................ 14

Argument ..................................................................................... 16

    I. Section 5 of the Fourteenth Amendment does not authorize Congress to override States' sovereign immunity from ADA retaliation claims by their employees. ............................... 16

        A. Congress did not identify a pattern of disability discrimination in state employment, much less one of disability-related retaliation. ........................................ 19

B. Without a pattern of retaliation or disability
    discrimination, Title V is not a congruent and
    proportional remedy. ..................................................... 26

II. Dupree waived her appeal by failing to object. ................... 28

A. This is not the rare case to allow plain-error review of
    waived objections. ......................................................... 29

B. Resolving this question of law could not be a plain error.
    ...................................................................................... 31

III. A dismissal based on state sovereign immunity is without
    prejudice because it is jurisdictional. ................................. 32

Conclusion ...................................................................................... 36

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Albra v. Advan, Inc.*,
490 F.3d 826 (11th Cir. 2007) .................................................. 30

*Alden v. Maine*,
527 U.S. 706 (1999) ................................................................. 7

*Aldossari ex rel. Aldossari v. Ripp*,
49 F.4th 236 (3d Cir. 2022) ..................................................... 33

*Alves v. Bd. of Regents of the Univ. Sys. of Georgia*,
804 F.3d 1149 (11th Cir. 2015) ..........................................24, 28

*Ass'n for Disabled Americans, Inc. v. Florida Int'l
Univ.*,
405 F.3d 954 (11th Cir. 2005) ................................................. 20

*Bd. of Trustees of the Univ. of Alabama v. Garrett*,
531 U.S. 356 (2001) .........................................................*passim*

*Block v. Texas Bd. of L. Examiners*,
952 F.3d 613 (5th Cir. 2020) ................................................... 23

*City of Boerne v. Flores*,
521 U.S. 507 (1997) ................................................................ 18

*Club Madonna Inc. v. City of Miami Beach*,
42 F.4th 1231 (11th Cir. 2022) ................................................ 13

*Crayton v. Callahan*,
120 F.3d 1217 (11th Cir. 1997) ................................................ 35

*Dellmuth v. Muth*,
491 U.S. 223 (1989) ................................................................. 2

*Demshki v. Monteith*,
   255 F.3d 986 (9th Cir. 2001) ..................................................11, 21

*Firefighters' Ret. Sys. v. EisnerAmper, L.L.P.*,
   898 F.3d 553 (5th Cir. 2018) ................................................... 32

*Fitzpatrick v. Bitzer*,
   427 U.S. 445 (1976) ................................................................ 17

*Grier v. Sec'y of Army*,
   799 F.2d 721 (11th Cir. 1986) ................................................. 35

*Hans v. Louisiana*,
   134 U.S. 1 (1890) .................................................................... 17

*Harty v. W. Point Realty, Inc.*,
   28 F.4th 435 (2d Cir. 2022) ................................................33, 34

*Henderson v. United States*,
   568 U.S. 266 (2013) ................................................................ 31

*Higgs v. Costa Crociere S.P.A. Co.*,
   969 F.3d 1295 (11th Cir. 2020) ............................................... 31

*Kennedy v. Floridian Hotel, Inc.*,
   998 F.3d 1221 (11th Cir. 2021) ...........................................34, 35

*Ledford v. Peeples*,
   657 F.3d 1222 (11th Cir. 2011) ............................................... 30

*Lewis v. Leonard*,
   716 F. App'x 910 (11th Cir. 2017) ........................................... 30

*McAdams v. Jefferson Cnty. 911 Emergency Commc'ns Dist., Inc.*,
   931 F.3d 1132 (11th Cir. 2019) ............................................... 13

*Moon v. Newsome*,
   863 F.2d 835 (11th Cir. 1989) ................................................. 30

*Morrison v. Amway Corp.*,
323 F.3d 920 (11th Cir. 2003) ................................................... 35

*MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co.*,
974 F.3d 1305 (11th Cir. 2020) ................................................. 35

*Nat'l Ass'n of the Deaf v. Florida*,
980 F.3d 763 (11th Cir. 2020) .......................................18, 19, 24

*Nichols v. Alabama State Bar*,
815 F.3d 726 (11th Cir. 2016) ................................................... 33

*PennEast Pipeline Co., LLC v. New Jersey*,
141 S. Ct. 2244 (2021) .........................................................16, 17

*Scarfo v. Ginsberg*,
175 F.3d 957 (11th Cir. 1999) ................................................... 35

*SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*,
600 F.3d 1334 (11th Cir. 2010) .................................................. 9

*Shotz v. City of Plantation, Fla.*,
344 F.3d 1161 (11th Cir. 2003) ................................................. 23

*Smith v. Dewberry*,
No. 21-10607, 2022 WL 1948947 (11th Cir. June 6,
2022) ........................................................................................ 29

*Tennessee v. Lane*,
541 U.S. 509 (2004) ..........................................................*passim*

*Toledo v. Sanchez*,
454 F.3d 24 (1st Cir. 2006)....................................................... 20

*United States v. $4,480,466.16 in Funds Seized from
Bank of Am. Acct. Ending in 2653*,
942 F.3d 655 (5th Cir. 2019) .................................................... 33

*United States v. Georgia*,
546 U.S. 151 (2006) ...........................................................17, 19

*Wilkerson v. H&S, Inc.*,
    366 F. App'x 49 (11th Cir. 2010) ................................................. 30

**Statutes**

42 U.S.C. § 12112 .................................................................. 7, 11

42 U.S.C. § 12202 .................................................................... 17

42 U.S.C. § 12203 ............................................................... *passim*

**Other Authorities**

11th Cir. R. 3-1 .................................................................. 13, 29

Fed. R. Civ. P. 41 .................................................................... 32

9 Wright & Miller, *Fed. Prac. & Proc.* § 2373 (4th ed.
    2022) ...................................................................................... 33

## JURISDICTION

This Court generally has federal question jurisdiction under 28 U.S.C. § 1331 to hear Americans with Disabilities Act claims, 42 U.S.C. §§ 12112, 12203. It has appellate jurisdiction over the final judgments of the district courts under 28 U.S.C. § 1291.

This Court lacks jurisdiction here, however, because state sovereign immunity "independently bars it." *Uberoi v. Supreme Ct. of Florida*, 819 F.3d 1311, 1313 (11th Cir. 2016). These cases therefore must be dismissed.

# STATEMENT OF ISSUES

1. In *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356 (2001), the Supreme Court held that Congress cannot abrogate state sovereign immunity with respect to discrimination claims under the Americans with Disabilities Act. The question here is whether Congress can abrogate that immunity to permit *retaliation* claims under the same Act, made by the same employees, alleging the same discrimination.

2. Whether a jurisdictional dismissal based on state sovereign immunity qualifies as a dismissal with prejudice or as a dismissal without prejudice.

# INTRODUCTION

When Congress passed the Americans with Disabilities Act, it decided to treat the States like any other employer. But unlike other employers, States retain sovereign immunity from private-individual suits. Congress can abrogate state sovereign immunity up to a point, but only up to a point. And in these consolidated cases, sovereign immunity plainly applies, barring both plaintiff Battle's and plaintiff Dupree's claims.

In each case, the district court held that state sovereign immunity bars state employees from filing ADA retaliation claims against their employers. The courts concluded that Congress lacked freewheeling authority under § 5 of the Fourteenth Amendment to abrogate state sovereign immunity and extend the ADA's retaliation provision to state employers. By enforcing this constitutional limit on Congress's authority, they vindicated "the fundamental constitutional balance between the Federal Government and the States." *Dellmuth v. Muth*, 491 U.S. 223, 227 (1989) (citation omitted).

None of this is groundbreaking news. The Supreme Court in *Board of Trustees of the University of Alabama v. Garrett* held that Congress may wield § 5 to override state sovereign immunity "only in response to state transgressions" of constitutional rights and

that Congress found no pattern of disability discrimination by the States in the employment context. 531 U.S. 356, 368 (2001). That meant state employees could not sue their employers under the ADA for discrimination.

*Garrett* controls these cases. Like the employees in *Garrett*, the employees here have never pointed to a pattern of disability discrimination by the States, much less a pattern of retaliation against employees complaining of discrimination. And *Congress* certainly made no such findings in enacting the ADA. With no pattern of unlawful state action to prompt Congress's remedial authority, sovereign immunity bars the retaliation claims here.

Finally, the dismissals below were *without* prejudice. The employees wrongly assume otherwise only by overlooking an important exception to the default dismissal rule: a jurisdictional dismissal is ordinarily without prejudice. Because state sovereign immunity deprived the district courts of jurisdiction, the dismissals were without prejudice.

## STATEMENT OF THE CASE

Detrich Battle sued his former employer, the Georgia Department of Corrections, claiming that he suffered discrimination and retaliation after he requested and secured disability accommodations. The Department of Corrections moved to dismiss and for judgment on the pleadings. The district court held that Battle had no plausible state law claims and that his ADA claims were barred by state sovereign immunity.

Similarly, Jennifer Dupree sued her former employer, the Georgia Department of Human Services, claiming that she suffered discrimination and retaliation because of her disabilities. The district court there also dismissed her ADA claims as barred by state sovereign immunity and declined to exercise jurisdiction over her state law claims.

### A. *Battle*

#### 1. Factual Background

Detrich Battle was hired by the Georgia Department of Corrections in July 2012 to work as an officer at Hancock State Prison. *Battle* Doc. 5-1 at 7. Starting in 2014, he developed an extensive disciplinary record for "chronic absenteeism," "failure to report to mandatory training," and "failure to perform assigned duties." *Id.* at 41 (capitalization omitted). For example, once

Battle argued with his supervisor because he decided that "he could not work the assigned post," and when he did not get his way, he "left [his] post" and the prison without permission. *Id.* at 40–41. A few weeks later, Battle received written notice that his pay would be docked because of that misconduct. *Id.* at 34. He met with his supervisor and two other officials to discuss the pay reduction, which he describes as "a harassment meeting on the issue of them taking [his] money." *Battle* Doc. 5 at 9. At the meeting, Battle claims that he had chest pain but that no one would call an ambulance or his family. *Id.*

Around the same time, the Department of Corrections began providing Battle with work accommodations because of physical-activity restrictions prescribed by his medical provider. *Battle* Doc. 5-1 at 13–14, 36. He was assigned to a post where he could avoid "kneeling, bending, squatting," and so on. *Id.* at 14.

Battle also requested medical leave at times; twice when it was not granted, he took "unauthorized leave" anyway. *Id.* at 33, 37. On one occasion, Battle fell while walking to his assigned post and then took five days off work. *Battle* Docs. 5 at 10–11; 5-1 at 8, 32. He claims that he was never given proper worker's compensation paperwork and was threatened with termination, and he says that he wanted to take more time off rather than

return to work. *Battle* Doc. 5 at 10–11. The Department of Corrections continued to accommodate Battle by assigning him to posts requiring reduced physical activity. *Battle* Doc. 5-1 at 12–13, 30.

About three months after his fall, in July 2015, an official placed Battle on "approved leave without pay" given his "many restrictions (medical)." *Battle* Docs. 5 at 11; 5-1 at 7. During that leave, Battle was diagnosed with postural orthostatic tachycardic syndrome. *Battle* Docs. 5 at 12; 5-1 at 29. A heart specialist concluded that, because of his condition, Battle suffered from "dizziness, palpitations, shortness of breath, and fatigue," and that until things resolved it would be "terribly difficult for him to work a steady job." *Battle* Doc. 5-1 at 29. The Department of Corrections allowed Battle to continue on leave with health benefits but without pay for some time. *Id.* at 43. Nearly three years later, the warden sent Battle a letter informing him that he needed to request another leave extension and provide supporting paperwork by April 24, 2018. *Id.* He provided information on April 16, his request was denied on April 19, and he was terminated on April 20. *Battle* Doc. 5 at 12.

## 2.    Procedural History

Battle sued his former employer and several prison officials because he believed that they had discriminated against him. In his amended *pro se* complaint, he relied on the Americans with Disabilities Act, alleging that he had suffered both intentional discrimination (Title I, 42 U.S.C. § 12112) and retaliation (Title V, 42 U.S.C. § 12203). *Id.* at 7. The Department of Corrections moved to dismiss, arguing that Battle's ADA claims were barred by state sovereign immunity[1] and that he failed to plead any plausible state-law claim. *Battle* Doc. 21-1 at 5–12.

The district court granted the motion in part. It held that the employment discrimination claim was barred by state sovereign immunity. *Battle* Doc. 36 at 13–14 (citing *Garrett*, 531 U.S. at 356). And it explained that, while the retaliation claim might also be barred by sovereign immunity, it would wait for more briefing to decide that issue. *Id.* The court dismissed all claims against the prison officials, which Battle does not contest on appeal. *Battle* Doc. 36 at 6 & n.2; *see Battle* Brief at 3, 6. It also held that the

---

[1] In the district courts this immunity was also described as "Eleventh Amendment immunity," a "convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment." *Alden v. Maine*, 527 U.S. 706, 713 (1999).

cursory state tort claims were "barred by sovereign immunity," and that even if they were not barred he failed to state a claim. *Battle* Doc. 36 at 7–9. The court did not specify whether the dismissal was "with prejudice" or "without prejudice."

Battle moved for reconsideration and to amend his complaint to expand his discrimination claims. *Battle* Docs. 39; 45. The district court denied both requests as futile, reiterating that state sovereign immunity bars ADA discrimination claims against the States. *Battle* Docs. 44; 47.

With only the retaliation claim remaining, the Department of Corrections moved for judgment on the pleadings. *Battle* Doc. 50-1. It again argued that state sovereign immunity bars ADA retaliation claims. *Id.* at 5–6. The district court granted the motion, concluding that *Garrett*'s holding—States enjoy state sovereign immunity from Title I discrimination claims by their employees—must apply to Title V retaliation claims as well. *Battle* Doc. 56 at 5–6.

Battle then appealed.

## B. *Dupree*

### 1. Factual Background

Jennifer Dupree suffers from "bipolar disorder," "manic" disorder, "post-traumatic stress disorder," and "depression."

*Dupree* Doc. 4 at 6; *Dupree* Brief at 3. Days after she was hired to fill an administrative role at the Georgia Department of Human Services, she disclosed that she would need considerable time off "to attend medical appointments" and would need "alternate work times to accommodate her." *Dupree* Docs. 4 at 10–11; 22 at 29.[2] In response, the Department of Human Services began evaluating her request by reaching out to her doctor, Dr. Gloria Okoro, for more information. *Dupree* Docs. 4 at 10–11; 22 at 26.

Dr. Okoro responded promptly and told the Department that Dupree was not prepared to handle any kind of work. *Dupree* Docs. 4 at 11; 22 at 26–28. She explained that Dupree "is unable to perform[] all job functions due to mood disorder," with symptoms including "mood swings, agitation, outbursts, paranoia, hallucinations, panic attacks, crying spells, [and] social withdrawal." *Dupree* Doc. 22 at 27. Her recommendation went

_____

[2] In her motion for leave to amend her complaint, Dupree provided additional documentation, specifically an FMLA form her doctor filled out for Human Services. *See Dupree* Doc. 22 at 26–29. That form is "incorporated by reference into the complaint," *see Dupree* Doc. 4 at 11, because "its authenticity is not challenged" (Dupree discussed it in the complaint and then provided it to the court, and the State accepts it as authentic) and because the information her doctor provided to Human Services is "central to [her] claim." *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337–38 (11th Cir. 2010).

right to the point: Dupree should do "no work in any capacity at this time." *Id.* at 28. Dupree was terminated less than a month after she was hired. *Id.* at 74. Dupree now claims that her doctor only "recommended FMLA" because of a mistaken belief that Dupree wanted "time away from work"; she asserts that, properly informed, her doctor would have given only "confirmation of [Dupree's] condition for accommodations under the ADA." *Dupree* Doc. 4 at 11.

## 2. Procedural History

Dupree sued the Department of Human Services and Pamela Owens because she believed that they had discriminated against her.[3] *Id.* at 2. She alleged that her employer violated the ADA because it would not provide a modified work schedule so she could attend medical appointments. *Id.* at 2, 6, 10–11. Dupree also claimed that it was wrong for her employer "to evaluate whether [she was] able to work," after she disclosed in her first week on the job that she was receiving extensive treatment for mental disorders. *Id.* at 12. In her view, her employer should have done

---

[3] The district court dismissed the ADA claims against Pamela Owens on other grounds. *See Dupree* Doc. 25 at 9–10. Dupree now concedes that the district court properly dismissed her claims against Owens. *Dupree* Br. at 4 n.2.

nothing but consider her "request for accommodations." *Id.* Along with her discrimination claim, Dupree included a retaliation claim and a state law "unfair termination/tort" claim. *Id.* at 2, 6.

The Department of Human Services moved to dismiss based on state sovereign immunity. *Dupree* Doc. 14 at 4–8. The Supreme Court had already decided that state employees cannot assert disability discrimination claims against the States, the Department explained, because Congress lacked constitutional authority to abrogate state sovereign immunity. *Id.* at 4–7. And it argued that Dupree's retaliation claim failed for the same reason. *Id.* at 7–8. Dupree never responded. *Dupree* Doc. 25 at 1 & n.1.

The magistrate judge recommended dismissing Dupree's complaint. *Dupree* Doc. 20 at 21–22. He concluded that Dupree raised three ADA claims: failure-to-accommodate and discriminatory termination claims under Title I (42 U.S.C. § 12112) and a retaliation claim under Title V (42 U.S.C. § 12203), and that all of them were barred by sovereign immunity. *Id.* at 12–14. "Title I claims," he concluded, "are clearly subject to Eleventh Amendment immunity under *Garrett.*" *Id.* at 12. And "*Garrett* 'necessarily applies to claims brought under Title V'" by state employees. *Id.* (citing *Demshki v. Monteith*, 255 F.3d 986, 988 (9th Cir. 2001)). Though courts often allow *pro se* plaintiffs a

chance to amend, the magistrate judge concluded that amendment would be futile because state sovereign immunity would still bar the ADA claims. *Id.* at 13–14. With the federal claims gone, the magistrate judge recommended declining supplemental jurisdiction over the state law claims. *Id.* at 17–19.

In response, Dupree sought to amend her complaint, proposing more state-law discrimination claims. *Dupree* Doc. 22 at 1. But she did not object to any of the magistrate judge's recommendations. *See generally id.* The Department of Human Services opposed the motion to amend, arguing that it would be futile. *Dupree* Doc. 23 at 4–6.

The district court adopted the magistrate judge's recommendations and dismissed the case. *Dupree* Doc. 25 at 14. Because Dupree never objected to the magistrate judge's report, the court reviewed only for plain error. *Id.* at 5. That decision made no difference, however, because the district court agreed that Dupree's discrimination and retaliation claims were barred by sovereign immunity. *Id.* at 7–8. As in the *Battle* case, the district court did not expressly state whether the dismissal was "with prejudice" or "without prejudice."

Dupree appealed the district court's ruling.

### C. Standard of Review

This Court reviews "de novo a district court's order granting" a "sovereign immunity defense." *McAdams v. Jefferson Cnty. 911 Emergency Commc'ns Dist., Inc.*, 931 F.3d 1132, 1134 (11th Cir. 2019) (citation omitted).

This Court generally will not review "a magistrate judge's findings or recommendations" if the party failed to object to them below. *Club Madonna Inc. v. City of Miami Beach*, 42 F.4th 1231, 1259 (11th Cir. 2022) (citation omitted). Only if it is "necessary in the interests of justice" will the Court overlook the waiver and review the decision below for plain error. 11th Cir. R. 3-1.

## SUMMARY OF ARGUMENT

**I.** The district courts correctly held that Congress cannot abrogate sovereign immunity with respect to Title V retaliation claims under the ADA. Congress relied on its limited power to abrogate state sovereign immunity under § 5 of the Fourteenth Amendment, and courts rigorously test § 5 legislation with a three-step analysis. First, they ask whether the regulation is meant to protect existing constitutional rights. Second, Congress must have identified a pattern of state constitutional violations that it plans to remedy and deter through the legislation. Third, the legislation must be congruent and proportional in how it remedies the unconstitutional acts that occurred. The retaliation provision of the ADA fails that test twice over.

To start, "Congress" did not "identif[y] a history and pattern of unconstitutional employment discrimination by the States against the disabled," *Garrett*, 531 U.S. at 368, much less a history of constitutional violations that would support abrogating sovereign immunity for *retaliation* claims. Indeed, the Supreme Court already held in *Garrett* that Congress identified *no* pattern of disability discrimination in state employment. *Id.*

The employees try to fill that void by pointing to non-employment discrimination, like in public accommodations, but

that evidence is irrelevant. The Supreme Court has consistently held that Congress cannot justify § 5 legislation in one context by pointing to constitutional violations in another. *Id*. at 370–71 & n.7. The accessibility of "hockey rinks" and "voting booths," has no bearing on "the accessibility of judicial services." *Tennessee v. Lane*, 541 U.S. 509, 530–31 (2004). So whether "courthouses" were accessible does not matter to whether Congress can abrogate immunity for a state-employee retaliation claim based on disability discrimination. *Battle* Br. at 11, 13.

Further, the retaliation provision is not a congruent and proportional response to whatever violations the employees do identify. In *Garrett*, the Court held that allowing discrimination claims against a state employer was a disproportionate remedy for equal protection violations because it imposed a significantly greater burden on the States than the Fourteenth Amendment imposed. The retaliation provision goes even further, empowering anyone who relies on or helps advance the ADA to sue the States. It is far more intrusive and therefore even less congruent and proportional than the discrimination provision. Every federal court to consider the issue has reached that conclusion, and this Court should do the same.

**II.** Dupree also waived her appeal by not objecting to the magistrate's report. Even if she could show that the "interests of justice" exception to that waiver should apply, her claim still fails under plain-error review. Congress cannot abrogate state sovereign immunity for retaliation claims, but even if it could, it was not *plain error* for the district court to hold otherwise, when *every court to examine the issue* has come to that conclusion.

**III.** And because the claims are barred by state sovereign immunity, the dismissals are "without prejudice." The employees assert that the district courts dismissed their claims "with prejudice," but the courts never said as much. Although there is a presumption of prejudice when a district court rules on the *merits*, these were jurisdictional dismissals, and the Court should affirm.

## ARGUMENT

### I.  Section 5 of the Fourteenth Amendment does not authorize Congress to override States' sovereign immunity from ADA retaliation claims by their employees.

"States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution. When the States entered the federal system, they did so with their sovereignty intact." *PennEast Pipeline Co., LLC v. New Jersey*, 141 S. Ct. 2244, 2258 (2021) (citations omitted).

That immunity covers suits like these: suits by citizens against their own State. *Id.* (citing *Hans v. Louisiana*, 134 U.S. 1, 14–15 (1890)).

To be sure, Congress's power to enforce the individual rights enshrined in the Fourteenth Amendment includes a limited power to abrogate state sovereign immunity. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 455–56 (1976). But to override state sovereign immunity, Congress must (1) explicitly say that it intends to do so and (2) act "pursuant to a valid grant of constitutional authority." *Garrett*, 531 U.S. at 363 (citation omitted).

Congress expressly declared its intention to abrogate sovereign immunity under the ADA, 42 U.S.C. § 12202, but the employees cannot establish that Congress had the *authority* to do so. Congress's Fourteenth Amendment authority to override state sovereign immunity comes in two forms. Of course, "Section 5 authorizes Congress to create a cause of action through which the citizen may vindicate his Fourteenth Amendment rights." *United States v. Georgia*, 546 U.S. 151, 158 (2006) (citation omitted). That is, Congress may create a private right of action "against the States for *actual* [constitutional] violations." *Id.* In addition, Congress may also respond to "a pattern of discrimination by the States which violates the Fourteenth Amendment" by enacting

statutes "to remedy and to deter" those violations. *Garrett,* 531 U.S. at 365, 374.

The employees here "are not proceeding under an actual-violation theory," *Nat'l Ass'n of the Deaf v. Florida*, 980 F.3d 763, 771 n.2 (11th Cir. 2020); *see Dupree* Br. at 16; *Battle* Br. at 13–14, so they must establish that Congress has the authority to prohibit a "broader swath of conduct" than is directly "forbidden by the Amendment's text," *Garrett*, 531 U.S. at 365 (citation omitted). Such prophylactic legislation must exhibit a "congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *Garrett*, 531 U.S. at 365 (quoting *City of Boerne v. Flores*, 521 U.S. 507, 520 (1997)). Thus, the employees must satisfy the Court's three-step test for abrogating sovereign immunity beyond what the constitution directly allows.

*First*, a court must "identify with some precision the scope of the constitutional right at issue" when Congress enacted the statute. *Garrett*, 531 U.S. at 365. *Second*, it must determine "whether Congress identified a history and pattern of unconstitutional [acts] by the States" in the relevant context. *Id.* at 368. *Third*, it compares the scope of the statute to the pattern of violations—if any exist—to assess whether "the remedy imposed

by Congress [is] congruent and proportional to the targeted violation." *Id.* at 374. In this case, then, the employees must identify a pattern of unconstitutional retaliation by the States and show why extending Title V beyond the scope of the Fourteenth Amendment is a congruent and proportional response to those violations. *Georgia*, 546 U.S. at 159. They have failed to do so.

A. **Congress did not identify a pattern of disability discrimination in state employment, much less one of disability-related retaliation.**

No matter what rights Congress intended to protect via the retaliation provisions of the ADA, there is no "pattern of unconstitutional *state action*." *Garrett*, 531 U.S. at 372 (emphasis added). The States never engaged in a "pattern of irrational state discrimination in employment against the disabled." *Id.* at 368.

The first step in assessing whether Title V provides a congruent and proportional remedy is to decide "which right or rights Congress sought to enforce when it enacted" Title V. *Nat'l Ass'n of the Deaf*, 980 F.3d at 771 (citation omitted). This step is important because it sets the bounds for the next step— identifying whether there is "a history and pattern" of constitutional violations—by defining what types of violations would support the statute. *Garrett*, 531 U.S. at 368.

After identifying the rights protected by a statute, the employees must produce "a history of unconstitutional discrimination" by state employers "to support Congress's determination that prophylactic legislation was necessary." *Ass'n for Disabled Americans, Inc. v. Florida Int'l Univ.*, 405 F.3d 954, 957 (11th Cir. 2005). In their search, plaintiffs are limited to "the specific constitutional rights and the history of constitutional violations *in the particular area at issue.*" *Toledo v. Sanchez*, 454 F.3d 24, 35 (1st Cir. 2006) (emphasis added); *see also Garrett*, 531 U.S. at 371 n.7. That limit is necessary, because the "history of discrimination and the need for prophylaxis will vary greatly" depending on the context. *Toledo*, 454 F.3d at 35.

Under these standards, Congress is clearly not authorized to abrogate state sovereign immunity with respect to Title V retaliation claims. The employees argue that, because Title V prohibits retaliation, Congress was concerned that state employers were violating disabled employees' First Amendment rights to freedom of speech and to petition, along with their right to equal protection. *Dupree* Br. at 16; *Battle* Br. at 12. Even if we assume that is true, there "is nothing in the ADA's legislative findings demonstrating a pattern of discrimination by states against employees who oppose unlawful employment

discrimination against the disabled." *Demshki*, 255 F.3d at 989. No acts of retaliation. Not one. And the employees need to produce a *pattern* of retaliatory conduct, because—as they read Title V—Congress was trying to stop States from punishing employees who exercised their First Amendment rights. No First Amendment retaliation means no § 5 remedy.

To stave off that result, the employees ask this Court to look more broadly at *any kind* of disability discrimination by state employers, but that is of no help to them, as established by *Garrett. Battle* Br. at 12; *Dupree* Br. at 18. In *Garrett*, the Court considered whether the States had discriminated against the disabled *in any way* in state employment. 531 U.S. at 368. It held that the state employees failed to establish a pattern of disability discrimination, pointing out that "the great majority" of the evidence Congress collected to justify the ADA did "not deal with the activities of States." *Garrett*, 531 U.S. at 369. Congress found extensive evidence of disability discrimination in *other* facets of society: "*employment in the private sector*, public accommodations, public services, transportation, and telecommunications." *Garrett*, 531 U.S. at 371–72. And the Court steadfastly refused to impute wrongdoing by private employers—or even discrimination by the States in other areas, such as public services—to state employers.

*Id.* Because States did not discriminate against the disabled *in state employment*, Congress could not use § 5 to remove state immunity and let state employees drag States into federal court. That remains true whether employees file discrimination claims as in *Garrett* or retaliation claims as they did here.

The Court drew the same careful distinctions in *Lane*, the case on which the employees rest all their hopes. *Lane* rejected the request to "consider Title II, with its wide variety of applications, as an undifferentiated whole." *Lane*, 541 U.S. at 530. The Court considered only whether the statute was valid as applied "to the class of cases implicating the accessibility of judicial services." *Lane*, 541 U.S. at 531. It compared the remedies Title II provided with the "long history" of "unequal treatment of disabled persons in the administration of judicial services," which are, of course, not at issue here. *Id.*

To get around *Garrett* and *Lane*, the employees ask this Court to ignore this required linkage altogether. If they had their way, they would deprive States of immunity from *employment* suits because some individuals with disabilities were excluded "from public facilities such as the courts" and suffered discrimination "in the provision of public services." *Battle* Br. at 13; *Dupree* Br. at 18. But that would scuttle the Supreme Court's understanding of § 5.

Congress may not subject States to ADA suits by state employees even if there had been disability discrimination "in the provision of public services and public accommodations." *Garrett*, 531 U.S. at 370–71 & n.7.

Indeed, "a plaintiff may bring a retaliation claim against a state entity *only* [if] the underlying claim of discrimination … abrogates sovereign immunity." *Block v. Texas Bd. of L. Examiners*, 952 F.3d 613, 619 (5th Cir. 2020) (emphasis added). That is because Title V is an add-on remedy that reinforces the prohibitions on discrimination found in Title I and those found in Title II. *Id.* It makes no sense to claim that Congress can abrogate sovereign immunity for retaliation where it cannot do so for the underlying discrimination claim, at least without some strong evidence of a need to do so.

The employees look for First Amendment violations to make up for the lack of equal protection violations, but they identify none, which is no surprise. For one thing, state employees could not have been retaliated against for speaking out about ADA violations *before* the ADA itself was enacted. And employers could not have violated their "correlative duty" to refrain from interfering with individuals who rely on the rights provided by the ADA. *Shotz v. City of Plantation*, 344 F.3d 1161, 1168 (11th Cir.

2003); *see* 42 U.S.C. § 12203. That the States could not have retaliated in this way does not excuse the employees from producing a pattern of retaliatory conduct. Where States have not violated constitutional rights, Congress cannot rely on § 5 to impose greater restrictions and must leave state sovereign immunity intact.

Also, a right that triggers greater scrutiny gives Congress "greater latitude to abrogate immunity" only because it makes it easier "to show a pattern of state constitutional violations." *Nat'l Ass'n of the Deaf*, 980 F.3d at 772 (citing *Lane*, 541 U.S. at 529). So if anything, this point works against the employees. That neither Congress nor the employees identify any relevant pattern of unconstitutional retaliation just shows that there is no authority to abrogate sovereign immunity here.

It is also unclear whether the First Amendment provides that much more latitude here anyway, because state employees' speech rights at work are much more limited than those of the public. *See Alves v. Bd. of Regents of the Univ. Sys. of Georgia*, 804 F.3d 1149, 1160 (11th Cir. 2015) ("employee must have spoken (1) as a citizen and (2) on a matter of public concern" to get protection; speaking "as an employee and on matters of personal interest" is not protected speech). Speech about "private employee grievance[s]"

receives no First Amendment protection. *Id.* at 1168. That may explain why the employees identify no pattern of First Amendment violations, either.

The employees' attempt to liken this case to *Lane* instead of *Garrett*, based on the kinds of rights at issue, *see Battle* Br. at 11–13; *Dupree* Br. at 18–19, is therefore unavailing. In *Lane* the inclusion of different rights made a difference: considering the due process clause and the Sixth Amendment confrontation clause allowed the *Lane* Court to identify "systematic deprivations of fundamental rights" of the disabled in the public accommodations context. *Lane*, 541 U.S. at 524–25. Not so here. No matter what rights are at stake, the employees fail to show where Congress identified a pattern of disability discrimination against state employees. And that dooms their case.

Congress may only subject States to private causes of action under its § 5 power when it acts to counter a "pattern of discrimination by the States which violates the Fourteenth Amendment." *Garrett*, 531 U.S. at 374. Congress found no such pattern here, so States retain their immunity from employee retaliation suits under the ADA.

## B. Without a pattern of retaliation or disability discrimination, Title V is not a congruent and proportional remedy.

Even if the employees could scrounge up evidence to establish a pattern of discrimination—and they cannot—it would not justify a private cause of action under Title V. Although Congress has leeway to experiment with different "remedial and preventative measures for unconstitutional actions," those means must be "congruent and proportional" to the injury it seeks to prevent or remedy. *Lane*, 541 U.S. at 520, 531. Title V applied to state employment far exceeds that limit.

Both employees accept that Title V's protections from retaliation expand and reinforce the other parts of the ADA. Title V ensures "unfettered access to statutory remedial mechanisms" and encourages "the exercise of rights under *other* provisions of the ADA." *See Battle* Br. at 14 (citation omitted); *Dupree* Br. at 8. Title I, in contrast, provides only a direct remedy for disabled employees when they suffer discrimination. Title V broadly prohibits retaliation against any individual who, among other things, opposes "any act or practice" prohibited by the ADA or assist in an EEOC investigation. 42 U.S.C. § 12203(a). That means that whenever it becomes necessary to take adverse action against a disabled employee, such as by terminating him for poor

job performance or misconduct, an employer bound by Title V must also carefully avoid the perception of acting with unlawful motives, such as seeking retaliation. Title V thus extends beyond protecting disabled employees and purports to impose greater restrictions on state employers.

So when it comes to equal protection violations, private remedies under Title V cannot be congruent and proportional, because the less burdensome remedies under Title I already failed the proportionality test in *Garrett*. Congress cobbled together (at most) "half a dozen" anecdotes of disability discrimination in state employment when it enacted the ADA. *Garrett*, 531 U.S. at 369. And those anecdotes "fall far short of even *suggesting* the pattern of unconstitutional discrimination on which § 5 legislation must be based." *Garrett*, 531 U.S. at 370 (emphasis added). If Title I already "far exceeds what is constitutionally required," then piling on a retaliation provision only exacerbates the mismatch. *Id.* at 372. Because Title V expands on the private remedy the Court already rejected in *Garrett*, it cannot be congruent and proportional.

Nor does the possibility that Congress also intended to protect employees' First Amendment rights change this calculus. Again, Congress collected no evidence of First Amendment violations by

state employers when it enacted the ADA. And it needed to amass significant evidence of such violations before applying Title V's strong remedy to the States. Plus, the retaliation provision extends beyond constitutionally protected speech to cover anyone who has "opposed any act or practice made unlawful by [the ADA]" or "made a charge, testified, assisted, or participated in any manner in an investigation." 42 U.S.C. § 12203(a). This broad statute "far exceeds what is constitutionally required" under the First Amendment by seemingly extending protection to "private employee grievance[s]" and exposing employers to liability for interfering with EEOC investigations. *Garrett*, 531 U.S. at 372; *Alves*, 804 F.3d at 1168.

The retaliation cause of action thus far exceeds any constitutional protection and is not congruent and proportional to the few instances of disability discrimination weighed and found lacking in *Garrett*, or any of the vague allegations the employees make here. Congress lacks authority to override the States' sovereign immunity from retaliation claims.

## II.   Dupree waived her appeal by failing to object.

There is another, independent reason that Dupree's arguments must fail. Dupree does not dispute that she failed to object to the magistrate's report and thereby "waive[d] the right to

challenge on appeal the district court's order." 11th Cir. R. 3-1; *Dupree* Br. at 7. Instead, she tries to squeeze her case into a narrow exception, one that allows this court to overlook a waiver when "necessary in the interests of justice." 11th Cir. R. 3-1. But she gives no reason why justice requires giving her special treatment here. And even if the Court deigns to review the case, Dupree cannot point to any plain error.

### A. This is not the rare case to allow plain-error review of waived objections.

As this Court's Rule 3-1 makes clear, declining to object to a magistrate judge's report has consequences. The first step to disputing a magistrate judge's recommendation is to raise specific objections before the district court. Dupree failed to do so. As a result, she waived the appellate review process too. 11th Cir. R. 3-1. It makes little sense to allow her to appeal the district court's order adopting the magistrate judge's report when she did not challenge the conclusions in the report in the first place.

Although this bright-line rule has an exception, it does not apply here. When circumstances preclude a litigant from timely objecting and "the interests of justice" are on the line, the waiver may give way. *E.g.*, *Smith v. Dewberry*, No. 21-10607, 2022 WL 1948947, at *1 & n.1 (11th Cir. June 6, 2022). But that is a hard

benchmark to satisfy; plain-error review "rarely applies in civil cases." *Ledford v. Peeples*, 657 F.3d 1222, 1258 (11th Cir. 2011). And stretching the exception to fit this run-of-the-mill case would rip a gaping hole in the rule.

For one thing, Dupree gives no reason why she could not have filed objections. To the contrary, she moved to amend her complaint only two weeks after the magistrate judge issued his report, which suggests that she could have timely objected but opted to move to amend instead. *See Dupree* Doc. 22.

On top of that, Dupree asks this Court to declare that *pro se* litigants with "several serious" medical conditions can never waive appellate review. *Dupree* Br. at 7. That rule would sweep in most *pro se* litigants bringing ADA or similar claims. But *pro se* litigants do not get a free pass to trample court rules whenever it is convenient for them. *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007). They must follow "the relevant law and rules of court" just "like any other litigant." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989). Nor is the file-your-objections requirement unreasonably difficult. *Pro se* litigants object to magistrate reports all the time. *See, e.g.*, *Lewis v. Leonard*, 716 F. App'x 910, 912 (11th Cir. 2017) (unpublished); *Wilkerson v. H&S, Inc.*, 366 F. App'x 49, 50 (11th Cir. 2010) (unpublished). Ignoring

the basic requirement that litigants must timely object to a magistrate judge's report is not excusable simply because one is *pro se*.

## B. Resolving this question of law could not be a plain error.

Even if the Court elects to overlook Dupree's waiver and review the district court's decision for plain error, her claim fails. To establish that a district court plainly erred, a litigant must identify (1) an error, (2) that is plain, (3) that affects her substantial rights, and (4) that "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Higgs v. Costa Crociere S.P.A. Co.*, 969 F.3d 1295, 1307 (11th Cir. 2020) (citation omitted). Only then may an appellate court "exercise its discretion to notice" the error. *Id.* (citation omitted). In civil cases like this one, "a finding of plain error is seldom justified." *Id.* (citation omitted).

This case is no exception to the general rule against civil plain error. A district court order that answers "a substantive legal question that was unsettled at the time the trial court acted" and that remains unsettled on appellate review can never qualify as a *plain* error. *Henderson v. United States*, 568 U.S. 266, 269 (2013). Dupree identifies no case that made it plain that Georgia is not

protected by sovereign immunity from retaliation suits by employees. She just declares that the district court "*plainly* erred." *E.g.*, *Dupree* Br. at 9, 10, 19, 22. Yet she can point to no federal court of appeals that has held that Congress had constitutional authority to extend a private cause of action for retaliation to state employees. Because the district court had to take the first stab at resolving a legal issue, it did not commit plain error.

Dupree had ample opportunity to challenge the magistrate judge's recommendation on sovereign immunity, and she did not object. This is not the rare civil case in which "fairness, integrity, or public reputation" requires this Court to intervene.

## III. A dismissal based on state sovereign immunity is without prejudice because it is jurisdictional.

Both employees assume that the district court dismissed the ADA claims with prejudice, even though neither court said so. *Battle* Br. at 17; *Dupree* Br. at 20. That silence does not qualify as error or even ambiguity. By default, jurisdictional dismissals like these are *without* prejudice.

Under Rule 41(b), an unlabeled dismissal is not presumed to be "with prejudice" if it is "for lack of jurisdiction, improper venue, or failure to join a party under Rule 19." *Firefighters' Ret. Sys. v. EisnerAmper, L.L.P.*, 898 F.3d 553, 560 (5th Cir. 2018); Fed. R.

Civ. Proc. 41(b). Any dismissal that does "not reach the merits because of a lack of jurisdiction … must be considered to have been [a] dismiss[al] without prejudice." 9 Wright & Miller, *Fed. Prac. & Proc.* § 2373 (4th ed. 2022); *see Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 445 (2d Cir. 2022); *United States v. $4,480,466.16 in Funds Seized from Bank of Am. Acct. Ending in 2653*, 942 F.3d 655, 666 (5th Cir. 2019). The district courts held that the employees' discrimination and retaliation claims were barred by state sovereign immunity. *Battle* Docs. 36 at 13–14; 56 at 5–6; *Dupree* Doc. 25 at 6–8. And, as both employees accept, state sovereign immunity is a threshold, jurisdictional issue. *Nichols v. Alabama State Bar*, 815 F.3d 726, 733 (11th Cir. 2016); *Battle* Br. at 16; *Dupree* Br. at 20. So when the courts below dismissed based on sovereign immunity, they dismissed without prejudice.

The employees' assumptions to the contrary are simply wrong. That the district courts both entered final judgment does not somehow change things. *See Battle* Br. at 17. A final order ends the litigation and gives all parties the green light to file an appeal, but final judgment "is not the same as making the dismissal with prejudice." *Aldossari ex rel. Aldossari v. Ripp*, 49 F.4th 236, 262 (3d Cir. 2022). Final judgment says nothing about

the nature of the dismissal. All that matters is that a dismissal based on sovereign immunity "has nothing to do with whether [a State] is subject to the ADA or has violated it." *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1231 (11th Cir. 2021). Final judgments hinged on that jurisdictional issue are still without prejudice.

Dupree argues that her case was dismissed with prejudice because the magistrate judge recommending doing so and the district court "adopt[ed] the R&R" and "dismisse[d] all claims." *Dupree* Doc. 25 at 14 (all caps omitted). But the district court dismissed the case *after* considering the magistrate's report. It started by adopting the specific conclusions that state sovereign immunity barred the ADA claims and that Dupree had no right to amend her complaint, and then it *independently* dismissed the case. *Id.* at 7–8, 14. Unlike what the magistrate judge recommended, the district court did not dismiss "with prejudice." It simply dismissed the case. *See Harty*, 28 F.4th at 444.

And even if one of the district courts erred by dismissing a claim with prejudice, that does not warrant a reversal or remand.[4]

---

[4] The district court in *Battle* may have erred in exercising supplemental jurisdiction over state law claims after it held that the federal claims were barred by sovereign immunity. *Battle* Doc. 36 at 7–9. "[O]nce the district court determines that subject

This Court routinely modifies otherwise proper jurisdictional dismissals from "with prejudice" to "without prejudice" while still affirming the dismissal. *See, e.g.*, *MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co.*, 974 F.3d 1305, 1320 (11th Cir. 2020); *Crayton v. Callahan*, 120 F.3d 1217, 1222 (11th Cir. 1997); *Grier v. Sec'y of Army*, 799 F.2d 721, 726 (11th Cir. 1986). Even if a defendant challenges jurisdiction through the wrong motion, such as by moving for summary judgment for lack of jurisdiction, a court may simply construe it as a request for dismissal for lack of jurisdiction. *See, e.g.*, *Kennedy*, 998 F.3d at 1230. So whether or not the Court finds it necessary to modify any aspect of the orders below into dismissals without prejudice, it should still affirm because the district courts resolved the cases on jurisdictional grounds, holding that the employees' ADA claims are barred by state sovereign immunity.

---

matter jurisdiction over a plaintiff's federal claims does not exist," it must dismiss any state law claims. *Scarfo v. Ginsberg*, 175 F.3d 957, 962 (11th Cir. 1999), *declined to follow on other grounds by Morrison v. Amway Corp.*, 323 F.3d 920, 929 (11th Cir. 2003). But the court still dismissed those claims against the Department of Corrections *without prejudice*, because it held that they were barred by sovereign immunity. That is the right result, so this Court should still affirm. *See Statton v. Florida Fed. Jud. Nominating Comm'n*, 959 F.3d 1061, 1065 (11th Cir. 2020).

# CONCLUSION

This Court should affirm the decisions of the district courts.

Respectfully submitted.

*/s/ James E. Barrett*

Bryan K. Webb
  *Deputy Attorney General*
Katherine Powers Stoff
  *Senior Asst. Attorney General*
Kimberly Blue Lewis
  *Senior Asst. Attorney General*

Christopher M. Carr
  *Attorney General of Georgia*
Stephen J. Petrany
  *Solicitor General*
James E. Barrett
  *Honors Fellow*

Office of the Georgia
  Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3602
jbarrett@law.ga.gov

*Counsel for Appellees*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 7225 words as counted by the word-processing system used to prepare the document.

/s/ *James E. Barrett*
James E. Barrett

## CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2022, I served this brief by electronically filing it with this Court's ECF system, which constitutes service on all attorneys who have appeared in this case and are registered to use the ECF system.


/s/ *James E. Barrett*
James E. Barrett